**ACE–FEDERAL REPORTERS, INC., Plaintiff,**

v.

**The FEDERAL ENERGY REGULATORY COMMISSION.**

**Civ. A. No. 90–0287.**

United States District Court, District of Columbia.

March 30, 1990.

Ronald K. Henry and John B. Veach, III, Washington, D.C., for plaintiff.

Asst. U.S. Atty. Charles Flynn, Washington, D.C., for the Government.

Michael Schopf and Charles Beamon, Washington, D.C., for F.E.R.C.

Joseph Gallo and Kathryn M. Kalowsky, Washington, D.C., for intervenor.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

Plaintiff, Ace–Federal Reporters, Inc. ("Ace–Federal"), an unsuccessful bidder for a government contract to provide stenographic services[1], filed this action for declaratory and injunctive relief to enjoin the Federal Energy Regulatory Commission ("FERC") from awarding the stenographic services contract, to any entity other than the plaintiff. On February 28, 1990, this Court granted plaintiff's preliminary injunction in order to maintain the status quo until the Court had an opportunity to consider the merits of the case. *See* Memorandum Order filed February 28, 1990. This matter is now before the Court on cross-motions for summary judgment.[2]

I.

The underlying facts are as follows. FERC, acting through its Division of Procurement, issued Solicitation No. DE–FB89–RC–00001 (the "First Solicitation") for stenographic services on August 25, 1989. The First Solicitation was issued as an Invitation for Bids (IFB) to provide stenographic reporting services at FERC for one year, from October 1, 1989 through September 30, 1990, with four one-year option periods thereafter. The stenographic services contractor receives revenue from the sale of transcripts to the public. Such sales fully defray the cost of performance and FERC has not made any payment for stenographic services in, at least, the last eight years. Plaintiff represents that FERC expected that the First Solicitation would result in "no charge" bids, and in fact four of the six bids from five vendors responding to the First Solicitation offerred "no charge" to FERC. Plaintiff submitted two bids, one bid offering to make payments in the amount of $.05 per page for the life of the contract, this bid being a so-called "bonus bid" and the alternative bid was one offering "no charge". Plaintiff alleges that its "bonus bid" offered the price most advantageous to the government and that as a result plaintiff expected to receive the award. Instead, the Contracting Officer cancelled the First Solicitation by issuing Amendment No. 2 on September 27, 1989. The amendment stated that the First Solicitation was "cancelled in its entirety due to ambiguities in the Invitation for Bids."

Plaintiff contends that FERC's determination to cancel the First Solicitation lacked any compelling justification and did not meet any of the criteria set forth in the applicable statutes and regulations governing the cancellation of a solicitation. It asserts that the action cancelling the solicitation was arbitrary and capricious and an abuse of discretion. On October 12, 1989, the plaintiff filed a timely protest with the

---

1. Ace–Federal is also the incumbent contractor.

2. Motions for summary judgment were filed by the FERC, as well as intervenor Ann Riley &

Associates, Ltd. ("Ann Riley"). The Court granted Ann Riley's motion to intervene as a defendant. *See* Order filed February 21, 1990.

General Accounting Office (GAO) objecting to the cancellation of the First Solicitation. GAO denied the protest on February 2, 1990.

On November 30, 1989, while the GAO protest was still pending, FERC issued a Second Solicitation for the same services, Solicitation No. DE–FB90–RC–00009 (the "Second Solicitation"). The plaintiff contends that the Second Solicitation did not prohibit bids offering payments to the government and specifically encouraged creative alternatives through its Provision L.12. Prior to amendment, Provision L.12 read: "Alternate bids submitted within the scope of this solicitation will be considered." By Amendment No. 1, plaintiff alleges that FERC changed its position and refused to consider "bonus bids" offering payments to the government. That amendment reads as follows:

> Under *Section L, Instructions Conditions and Notices to Offerors*, page 63 of the basic solicitation, Item *L.12, Alternate Bids*, add to the heading *"and Bonus Bid"*. At the end of the sentence under the heading add the following new sentence: "Bonus bids, including offers of additional sums to be paid to the Government, will not be considered."

Plaintiff thereupon filed a second protest with the GAO based upon its contention that FERC violated the statutory and public policy requirements in that it included provisions in the Second Solicitation that among other things refused to consider bonus bids.[3]

Amendment No. 4 to the Second Solicitation was published and plaintiff contends that Amendment No. 4 removed the prohibition against submitting bonus bids. Amendment No. 4 reads as follows:

> The purpose of this amendment is to delete provision L.12, entitled *Alternative Bids*, and substitute the provisions L.12, entitled *Alternate Proposal Information*. In addition, this amendment will incorporate 90 days in Block 12 of

the Standard Form 33, which was inadvertently left out. Accordingly.

> 1. Provision L.12 shall read:
>
> L.12—*ALTERNATE PROPOSAL INFORMATION*, Alternate proposals are not solicited, are not desired, and shall not be evaluated.

Plaintiff submitted a bonus bid substantially in excess of its original bid in which it offered to pay FERC approximately $1.25 million dollars over the five-year life of the contract for the privilege of providing stenographic services to the agency. FERC opened the bids pursuant to the Second Solicitation on February 5, 1990. None of the other bidders offered to make any payments to provide the services. Plaintiff alleges that its bid was the most advantageous to the government but FERC did not accept plaintiff's bid. By letter dated February 9, 1990, FERC informed plaintiff that its bid was rejected because it contained a bonus provision. The letter also stated that a lottery would be held among those contractors submitting "no charge" bids. The lottery was held and was won by Ann Riley.

## II.

■ Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court concludes that there are not issue of material fact to preclude a judgment as a matter of law.[4]

---

**3.** In view of this Court's decision to address the case on the merits after briefing by the interested parties, *see* Memorandum Order filed February 28, 1990, the GAO, through counsel, has

informed the Court that it will stay its resolution of plaintiff's second protest.

**4.** *The parties agree that this case is ripe for a ruling on cross-motions for summary.*

## III.

A party challenging the legality of procurement decisions "bear[s] a heavy burden of showing either that (1) the procurement official's decisions on matters committed primarily to his own discretion had no rational basis, or (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations." *Kentron Hawaii, Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C.Cir.1973). The initial issue before this Court is whether the contracting officer had a "rational basis" to cancel the First Solicitation.

> Preservation of the integrity of the competitive bid system dictates that, after bids have been opened, award must be made to that responsible bidder who submitted the lowest responsive bid, unless there is a *compelling reason* to reject all bids and cancel the invitation.

48 C.F.R. § 14.404–1(a)(1) (emphasis the Court's). "Invitations may be cancelled and all bids rejected before award but after opening when, consistent with paragraph (a)(1) above, the agency head determines in writing that [among other things]—(1) Inadequate or ambiguous specifications were cited in the invitation. 48 C.F.R. § 14.404–1(c)(1). The Court further notes that "contracting officers should be allowed wide latitude to exercise business judgment." 48 C.F.R. § 1.602–2.

## IV.

The Contracting Officer ("CO") asserts that after the August 25, 1989, First Solicitation, "several problems became apparent." Declaration of James E. Thompson [5], Exhibit A to FERC's Motion For Summary Judgment ("Thompson's Declaration"). The problems stated were (1) the omission of a clause requiring bid and performance bond; (2) the omission of an organizational conflict of interest clause; (3) the non-compliance with a requirement that quarterly sales reports be submitted to the Commission pursuant to the existing contract for stenographic services with Ace–Federal; (4) the fact that the contract did not reflect recent legislative and regulatory changes, particularly the Services Contract Act; and (5) the solicitation did not include a clause referring to the potential loss of exhibits by a stenographer. *Id.*

Plaintiff argues that the reason FERC cancelled the First Solicitation was that FERC did not consider Ace–Federal's bonus bid as an inducement since the money would have to be turned over to the Treasury. Ace–Federal's Memorandum In Support of the Cross Motion for Summary Judgment and Consolidated Response in Opposition to the Motions for Summary Judgment of the FERC and Ann Riley ("Ace–Federal's Cross Motion") at 9. Ace–Federal points out that the "determination and findings" that were issued by FERC on September 26, 1989, at the time the decision was made to cancel the First Solicitation states that:

> The Contracting Officer has determined that the apparent disparity in bids submitted by the five firms indicates that the specifications in the invitation for bid are ambiguous, and, therefore, recommends the cancellation of this solicitation, and clarification and resolicitation of these requirements.

*Id.* at 8, Exhibit A. Plaintiff further notes that "in response to Ace–Federal's First Protest on October 13, 1989, the contracting officer stated that the bids of Ace–Federal were not considered responsive since there was no provision in the First Solicitation permitting alternative bids," and further the CO "questioned the 'legality of Ace–Federal's offer of payment to the Government of five cents per original page.' " *Id.* at 9.[6]

---

**5.** Mr. Thompson is the Director of the division of Procurement. His declaration, date November 20, 1989, was submitted to the GAO in response to Ace–Federal's protest.

**6.** The letter from Mr. Thompson dated October 13, 1989, states in pertinent part:

> You are also advised that the decision to cancel the solicitation was made jointly by the

> Contracting Officer and the Head of the Contracting Agency (HCA), base on Federal Acquisition Regulation (FAR) 14.404–(c)(1).
>
> Further, (based on my reasonable judgment) the bid of Ace–Federal Reporters, Inc. was not considered responsive, since there was no provision in the solicitation for either

FERC later stated that Ace–Federal's offer to pay the FERC five cents per original page was responsive to the solicitation and was not prohibited by either the terms of the solicitation or the FAR. *Id., See* Ace–Federal's Memorandum for Preliminary Injunction, Exhibit C at 2. Finally, Ace–Federal concludes that "once it realized that the original justification for cancelling the solicitation was improper, the FERC began an intensive search for some way to justify its cancellation decision." Ace–Federal's Cross Motion at 10. On November 20, 1989, the FERC further responded to the first GAO protest and attempted to justify the original cancellation decision. *Id., See* Ace–Federal's Memorandum for Preliminary Injunction, Exhibit B.

Ace–Federal argues that the November 20, 1989 reasons for the cancellation are *post hoc* rationalizations and should be ignored. Ace–Federal's Cross Motion at 10.[7] Ace–Federal further argues that "even if the FERC's *post hoc* rationalizations were permitted, however, they would not provide a compelling reason for cancellation of the First Solicitation. The Court will address each of the reasons given by FERC for the cancellation.

### A.

First, the omission of clauses requiring bid and performance bonds. The regulations provide that "performance bonds *may* be required when necessary to protect the Government's interest." 48 C.F.R. § 28.103–2(a) (emphasis the Court's). Accordingly, there is no mandatory requirement that there be a performance bond.

The CO stated that "since the Solicitation did not contain these two bond requirements, there was no protection for the government in the event of contractor default." Thompson's Declaration par. 10. Ace–Federal points out that in the Second Solicitation, FERC indicated that the contractors would be required to provide a $10,000 bid and performance bond. Ace–Federal's Cross Motion at 12. Ace–Federal argues that "[t]he insignificance of the bonds is demonstrated by the trivial bond amounts sought in the Second Solicitation." *Id.*

The failure to provide the performance bond could have been remedied by requiring the successful bidder to provide such a bond. *see* Ace–Federal's Memorandum for Preliminary Injunction, Exhibit E.[8] Further, the Court must agree with Ace–Federal that the low amount of the bond in the Second Solicitation, does suggest that the lack of the bid and performance bond was not a major concern for FERC.

### B.

Second, the omission of an organizational conflict of interest clause. Ace–Federal contends that the First Solicitation did, in fact, incorporate an organizational conflicts of interest provision on page 32. *Id.* at 15, referring to FERC's Motion for Summary Judgment, Exhibit G. The Court notes upon review of the First Solicitation, that on page 32 the contract incorporates by reference the Organizational Conflicts of Interest—General (APR 1984), DEAR 952.-

---

permitting or accepting alternate bids or add-ons (extras)—FAR 14.404–2(b) and (d).

The legality of Ace–Federal Reporters offer of payment to the government at five cents per original page is questionned [sic]. In addition, this was no inducement, since any money FERC might have received would have been deposited in the general funds of the U.S. Treasury, rather than accrue to FERC's benefit.

Ace–Federal's Motion for Temporary Restraining Order and for Preliminary Injunction ("Ace–Federal's Memorandum for Preliminary Injunction"), Exhibit A.

7. The parties dispute whether the review of alleged *post hoc* rationalization should be precluded in a procurement case. The Court has noted

earlier that its review is to determine whether the CO had a "rational basis" to conclude that "compelling reasons" justified cancellation of the First Solicitation. In making this determination the Court will review the whole record, the Court need not determine whether the reasons are *post hoc*, but must determine whether the record supports the finding that the CO had a "rational basis" for his decision.

8. In *Harsco Corp.*, B–236777 dated December 13, 1989, the Comptroller General ruled that contracting officers have the discretion to award a contract under a deficient solicitation only if doing so "would serve the actual needs of the government."

209–71.[9] The CO states "[t]he Solicitation also omitted a conflict of interest clause." Thompson's Declaration par. 11. However, upon review of the record it is clear that the CO's statement is incorrect. Ace–Federal further notes that "[i]n the second solicitation the FERC merely added a demand that offerors certify their compliance with this same provision." Ace–Federal's Cross Motion at 15.

The Court notes that neither FERC or Ann Riley respond in their briefs to plaintiff's argument regarding the existence of the conflict of interest clause. The failure to have a conflict of interest clause could not be a compelling reason to cancel the First Solicitation, because such a clause was, in fact, in the First Solicitation.[10]

### C.

Third, the non-compliance with a quarterly sales reporting requirement. It is undisputed that Ace–Federal, the incumbent contractor, did not file the quarterly sales report with the Commission as required by the existing contract. Ace–Federal contends that the requirement was informally waived. The CO states that "no member of my procurement staff recalled orally waiving this requirement." Thompson's Declaration par. 8. He notes that Ace–Federal is unable to specify when the report was waived or who had waived it. *Id.* The CO states that he "realized that the quarterly report requirement in the contract did not reflect the needs of the government nor the reality of the administration of the contract for stenographic services." *Id.*

Ace–Federal states that "[t]o remedy this supposed confusion, the Second Solicitation merely stated that quarterly reports would not be submitted except when requested by the contracting officer." The Court notes that the failure to provide quarterly reports would put the other bidders at a disadvantage to the incumbent bidder, in this case Ace–Federal. However,

in view of the manner FERC remedied the lack of quarterly reports, the Court must question whether the lack of quarterly reports could serve as a compelling reason to cancel the First Solicitation. Notwithstanding the issue of waiver, the Court notes that the FERC never requested the reports before, or after the First Solicitation. It appears that during the Second Solicitation, the other bidders were still at the disadvantage they were in during the First Solicitation.

### D.

Fourth, the fact that the contract did not reflect recent legislation. Ace–Federal contends that "the only item relating to the requirement of the Service Contract Act that was missing from the First Solicitation was the as then unissued Department of Labor wage determination for labor categories covering stenographic services." Ace–Federal's Cross Motion at 14. The First Solicitation did provide that "The government has requested a Department of Labor wage determination for the labor categories identified herein. It will be attached to the negotiated contract." FERC's Motion for Summary Judgment, Exhibit G. Ace–Federal states that "[i]n the Second Solicitation, issued by the FERC on November 30, 1989, the only change relating to the Service Contract Act was the inclusion of the by then issued wage rate determination as an attachment." Ace–Federal's Cross Motion at 14. Ace–Federal argues that the absence of this wage rate determination from the First Solicitation cannot be viewed as a compelling reason to cancel the solicitation because all bidders were on notice that they would be required to comply with the wage determination once it was issued.

### E.

Finally, the solicitation did not include a clause referring to the potential loss of exhibits by a stenographer. Ace–Federal submits the First Solicitation contained

9. The DEAR refers to the Department of Energy Acquisition Regulation, with Title 48, the Federal Acquisition Regulation System, of the Code of Federal Regulation.

10. The Court notes that the CO does not state that the conflict of interest clause on page 32 was inadequate, but states that there was no clause.

three separate provisions for safeguarding data. *Id.* at 16. The first was contained at page 17, provision F.9, entitled "Delivery of Stenographic Notes"; the second was contained at page 23, provision H.3, entitled "Stenographic Notes"; and the third was contained at page 27, provision H.17, entitled "Confidentiality of Information." Ace–Federal argues that the additional sentence in the Second Solicitation only repeated the more detailed requirements which existed at page 23, provision H.3 of the First Solicitation.

## V.

■ Upon review of the record in this case the Court questions whether the reasons given in the CO's November 20, 1989 declaration are the actual reasons for cancelling the First Solicitation. The reasons given in the November 20, 1989 declaration are not consistent with the reasons stated by FERC on September 26, 1989 or in the October 13, 1989 letter. Moreover, upon review of the reasons set forth in the November 20, 1989 declaration, none of the reasons, individually, or together, would justify a compelling reason to cancel the First solicitation. The Court acknowledges that the "CO should be allowed wide latitude to exercise business judgment," *see* 48 C.F.R. § 1.602–2; however, here the CO has abused his discretion and there was no rational basis to cancel the First Solicitation.[11]

11. Ann–Riley states "[a]lthough *Comptroller General* decisions are not binding on the Court, federal courts in the District of Columbia Circuit have repeatedly stated that they are reluctant to interfere with the federal procurement process when the Comptroller General has made a determination. *M. Steinthat [Steinthal & Co. v. Seamans]*, 455 F.2d [1289] at 1304, 1305 [D.C.Cir.1971]; *Wheelabrator Corp. v. Chafee,* 455 F.2d 1306, 1317 (D.C.Cir.1971)." Ann–Riley's Memorandum In Opposition to Plaintiff's Cross–Motion for Summary Judgment and Consolidated Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment at 19, n. 5. However, this Court concludes that the record is clear that the CO had no rational basis to cancel the First Solicitation; therefore, the Court will not uphold the Comptroller General. The Court further notes that the Comptroller General's decision was based on determining

## VI.

■ Ace–Federal additionally requests that this Court conclude that it should be awarded the contract. "It is undisputable that the ultimate grant of a contract must be left to the discretion of a government agency; the courts will not make contracts for the parties." *Delta Data Systems Corp. v. Webster,* 744 F.2d 197, 204 (D.C. Cir.1984) (citing *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859, 869 (D.C.Cir. 1970). "It follows that a court may not order the award of a contract unless it is clear that, but for the illegal behavior of the agency, the contract would have been awarded to the party asking the court to order the award." *Delta Data Systems Corp. v. Webster,* 744 F.2d at 204.

This Court cannot conclude that, but for the action of the agency, plaintiff would have been awarded the contract. Although, the FERC conceded that plaintiff's bonus bid was responsive to the solicitation, the agency has not been given the opportunity to determine which contractor provided the most advantageous bid.[12] Accordingly, the case should be remanded to the agency to determine which contractor provided the most advantageous bid. In determining which contractor should be awarded the contract, the FERC must do so by "considering only price and the price-related factors included in the invitation." 48 C.F.R. § 14.407–1(a)(3), *see also* § 14.201–8.

whether the omission of the bid and performance bond was a compelling reason to cancel the First Solicitation, and did not review the record before this Court. *See* FERC's Motion for Summary Judgment, Exhibit F.

12. The Court notes that in Post–Conference comments the FERC does indicate that in a hypothetical, if it were to determine which contractor provided the most advantageous offer, it would draw a lottery between Ace Federal, Ann Riley, and Executive Court Reporters, Inc. Ace–Federal's Motion for Preliminary Injunction, Exhibit C. However, that was not an actual finding by the agency. In the hypothetical, the FERC had concluded that Ace–Federal's bonus bid was not the most advantageous because the burdens of administering the bonus payments would outweigh the negligible advantage they would provide to the Commission.

## VII.

Because the Court has concluded that the cancellation of the First Solicitation was improper, the Court need not address the Second Solicitation. The Court feels compelled to state that intervenor Ann Riley is an innocent party in this litigation, and that but for the manner in which the FERC conducted both solicitations, there would be no need for this suit.

For the reasons discussed above, the Court concludes that the FERC and Ann Riley's, respective, motions for summary judgment must be denied, and Ace–Federal's cross-motion for summary judgment should be granted in part and denied in part. This Court further concludes that this case should be remanded to the FERC to determine which contractor provided the most advantageous bid to the First Solicitation.